AF Approval _TMa_                                    Chief Approval _CB_

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 6:22-cr-19-PGB-DCI

ANDRE MAURICE LEWIS

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, ANDRE MAURICE LEWIS, and the attorney for the defendant, Joshua R. Lukman, Esquire, mutually agree as follows:

A.    **Particularized Terms**

1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment.  Count One charges the defendant with Enticement of a Minor, in violation of 18 U.S.C. § 2422(b).

2.    Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of imprisonment of 10 years up to life; a fine of up to $250,000; a term of supervised release of at least five years, up to life; and a special assessment of $100.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the

Defendant's Initials _AL_

defendant to make restitution to any victim of the offense, or to the community, as set forth below.

Additionally, pursuant to 18 U.S.C. § 3014, the Court shall impose a $5,000 special assessment on any non-indigent defendant convicted of an offense in violation of certain enumerated statutes involving: (1) peonage, slavery, and trafficking in persons; (2) sexual abuse; (3) sexual exploitation and other abuse of children; (4) transportation for illegal sexual activity; or (5) human smuggling in violation of the Immigration and Nationality Act (exempting any individual involved in the smuggling of an alien who is the alien's spouse, parent, son or daughter).

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:    The defendant knowingly persuaded, induced, enticed, or coerced an individual to engage in sexual activity, as charged;

Second:    The defendant used the Internet to do so;

Third:    When the defendant did these acts, the individual was less than 18 years old; and

Fourth:    One or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under federal law, specifically, the production of child pornography, in violation of 18 U.S.C. § 2251(a).

Defendant's Initials _AL___                    2

4.      Counts Dismissed

At the time of sentencing, the remaining count against the defendant,
Count Two, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.      No Further Charges

If the Court accepts this plea agreement, the United States Attorney's
Office for the Middle District of Florida agrees not to charge defendant with
committing any other federal criminal offenses known to the United States
Attorney's Office at the time of the execution of this agreement, related to the
conduct giving rise to this plea agreement.

6.      Mandatory Restitution to Victims of Offense of Conviction

Pursuant to 18 U.S.C. § 2259, defendant agrees to make restitution to
known victims of the offense for the full amount of the victims' losses as determined
by the Court.  Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not
to oppose bifurcation of the sentencing hearing if the victims' losses are not
ascertainable prior to sentencing.

7.      Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information
is received suggesting such a recommendation to be unwarranted, the United States
will recommend to the Court that the defendant receive a two-level downward
adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The
defendant understands that this recommendation or request is not binding on the

Defendant's Initials _AL_            3

Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this plea agreement, including, but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2428, whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the following: the Samsung Galaxy A21 cell phone seized from the defendant at the time of his arrest, which asset facilitated the offense charged in Count One.

Defendant's Initials _AL_                4

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

Defendant's Initials _AL_                  5

The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other

Defendant's Initials  AL                6

property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

Defendant's Initials _AL_       7

9.    Sex Offender Registration and Notification

The defendant has been advised and understands, that under the Sex
Offender Registration and Notification Act, a federal law, the defendant must
register and keep the registration current in each of the following jurisdictions: the
location of the defendant's residence, the location of the defendant's employment;
and, if the defendant is a student, the location of the defendant's school.  Registration
will require that the defendant provide information that includes name, residence
address, and the names and addresses of any places at which the defendant is or will
be an employee or a student.  The defendant understands that he must update his
registrations not later than three business days after any change of name, residence,
employment, or student status.  The defendant understands that failure to comply
with these obligations subjects the defendant to prosecution for failure to register
under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment,
or both.

**B.    Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or
in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any
victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18
U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to
any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all

Defendant's Initials _AL_                8

counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials _AL_          9

4.    <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this plea agreement, consents to the release of the defendant's tax returns for the previous five

Defendant's Initials _AL_                    10

years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government

Defendant's Initials AL          11

expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _AL_                    12

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant

Defendant's Initials _AL_            13

questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _AL_                14

13.    Certification

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this _____ day of August, 2022.

ROGER B. HANDBERG
United States Attorney


_____                    _____
ANDRE MAURICE LEWIS                          Emily C. L. Chang
Defendant                                    Assistant United States Attorney


_____                    _____
Joshua R. Lukman, Esquire                    Chauncey A. Bratt
Attorney for Defendant                       Assistant United States Attorney
                                             Deputy Chief, Orlando Division


Defendant's Initials _____                 15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                         CASE NO. 6:22-cr-19-PGB-DCI

ANDRE MAURICE LEWIS

### PERSONALIZATION OF ELEMENTS

**First:** Did you knowingly persuade, induce, entice, or coerce an individual to engage in sexual activity, as charged?

**Second:** Did you use the Internet to do so?

**Third:** When you did these acts, was the individual less than 18 years old?

**Fourth:** Could one or more of the individuals engaging in the sexual activity been charged with a criminal offense under federal law, specifically, the production of child pornography, in violation of 18 U.S.C. § 2251(a)?

Defendant's Initials _AL_        16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 6:22-cr-19-PGB-DCI

ANDRE MAURICE LEWIS

FACTUAL BASIS

From on or about January 20, 2021, through on or about January 21, 2021, in the Middle District of Florida, and elsewhere, the defendant, ANDRE MAURICE LEWIS, using a facility and means of interstate commerce, did knowingly persuade, induce, entice, and coerce, and attempt to persuade, induce, entice, and coerce, an individual who had not attained the age of 18 years, to engage in sexual activity for which any person could be charged with a criminal offense, specifically: the production of child pornography, in violation of 18 U.S.C. § 2251(a).

On January 20, 2021, beginning at approximately 6:45 p.m., the defendant contacted a neighbor's 12-year-old daughter (CV) through Snapchat, an Internet-based social media platform.  The defendant knew CV's mother and had her phone number in his phone as a contact.  Because he had that information, the defendant was able to identify CV's Snapchat account and invite CV to connect on Snapchat (which CV did, not knowing that the defendant was behind the other account). When the defendant connected with CV's Snapchat account, he knew that CV was 12 years old.  The defendant also knew CV's siblings—and he later exploited that information to scare CV into complying with his sexual demands.

Defendant's Initials _AL_                    17

After connecting with CV through Snapchat, the defendant used Snapchat to communicate with her.  First, the defendant asked CV where she was from, and she responded, "Orlando Florida."  The defendant said he was in Orlando as well.  He encouraged her to "send a better pic of you."  He then asked CV how old she was. CV accidentally typed "14" (even though she was 12) because her phone often froze and malfunctioned, and the screen had many cracks.

The defendant responded, "U mean 13 turning 14."  CV then sent the defendant an audio message, saying, "I meant 12 turning 13 this year."  The defendant asked what part of Orlando she lived in because "I'm trying to see if I'm close by u."

CV asked the defendant how old he was, and the defendant claimed that he was 20 years old.  (In fact, the defendant was 35 years old.)  CV then told the defendant that she had a boyfriend.  The defendant said, "He don't gotta know we talking… you wouldn't be shy to talk to someone older."  He also asked whether CV "ever did anything with an older person" and whether she would be scared to do anything with an older guy.  She said, yes.  He replied, "I wont hurt u if we have sex…I would take it very easy on u."  The defendant also told CV, "No one will know U get what im saying. I wont get you pregnant that's the thing. When I'm about to cummm Cima make sure I pull my dick out of your pussy before I cumm."

The defendant went on to ask CV whether she had ever had sex before.  He also told her that she was "so pretty" and "beautiful."  The defendant said, "So u still a virgin. So if I have sex with you it will hurt at first when I put it inside u. But after

Defendant's Initials _AL_                    18

its inside you it don't hurt at all." He also asked, "Do you have a body. Like ass??" CV then sent a selfie of her sitting (fully clothed) on a bathroom counter. The defendant responded, "Oh ok..I like that."

The defendant instructed CV to turn on her location "so I can see howfar we s from each other. Then turn it off after I see ok…let me know when its ok. Turn it on baby." He also asked where her boyfriend lived, and who she lived with. The defendant also asked whether CV's mom was home at the moment, and whether CV's mom knew that CV talked to older guys.

The defendant also said, "What if I say I know u and your momma. . . Damn. . . But what if I don't tell her." At this point, CV sent a selfie of herself with another girl (both were clothed).

The defendant commented that it was crazy that CV's Snapchat was available in Quick Add even though the defendant wasn't connected to CV's mom via Snapchat. The defendant then asked CV, "Are u scared now," and encouraged her not to be scared, saying, "Don't be scared. I wont say nothing. You don't want to get in trouble right. . . . Okay so the[n]…whyyy. Well you can delete all our messages Everytime. So u wouldn't want to do something together."

CV responded, "No im only 12 and i want to stay a virgin intill im in my 20s." The defendant replied, "Ok…so what if we don't have sex…we just do lil simple things…you can just give me some head." CV declined and told him, "Dont u get it u are making me uncomfortable amd im just a little girl." The defendant responded, "Well then guess ill well ima just tell your mom then. I saved all the messages."

Defendant's Initials _AL_                    19

The defendant kept saying that he would tell CV's mom, and said that he had the mother's phone number, and that he would send her all of CV's messages. CV said "Plz stop…I'll just get hit." CV also stated, "U are trying to get me to do things i dont want to do u are making me very uncomfortable and scared and things im not ready for."

The defendant then asked if CV wanted to make a deal by being "friends on here but what if we just do things on video instead." CV replied, "Nun plz."

The defendant then asked CV to "do me a favor right now. Trust me it will be ok. Go. To your bathroom real quick and shut the door. Let me know when u in there." CV responded, "Why Plz i don't want to do this." The defendant responded, "Just go for me. Just go. Its going to be okay." CV answered, "No its not," but she still went to the bathroom and replied, "Im in here what."

The defendant then said, "Take off ur clothes right now." CV asked, "Why." The defendant responded, "Cause I want you to play with ur pussy while I jack my dick..this will only take 3 mins and ill be done ok. On video ok." CV then sent an audio file of her wherein she was crying and telling the defendant that he was telling her to do something that she didn't want to do and "blackmailing me this is [unintelligible] just so you don't tell my mom not knowing what you were going to happen to me. And you're not understanding that."

CV then sent another audio file. In it, she was still crying. She said, "You keep saying it's going to be okay, it's not going to be okay." He responded (by text), "Sweetie its gonna be ok. Stop crying. I promise u."

Defendant's Initials _AL_                20

CV sent another audio file, in which she stated, "It's not going to be okay. You keep threatening me that you're going to tell my mom if I don't do these things." He responded, "If u do it for me this I won't tell her ok." CV replied with an audio file, stating, "See that's the problem, you're trying to get me to do things I don't want to." She was in tears and sounded very distressed in all of these audio files.

The defendant responded, "Yes that's all u have to do ok. . . Can u just do it plz. The 3 mins on video. If u do it everything will be ok." CV replied, "U are using me for my body and i dont want to see your dick i just want to be left alone unharmed with out my mon told anything plz can u go do this to another girl plz im only 12." The defendant said, "Ok then..u don't want to do it fine. Ok. Bye I got cha."

CV answered, "So u can go tell my mom so i can get in trouble and u keep saying stop crying u dont know how scared i am." The defendant responded, "Scared for what. I'm not trying to hurt u or kill u. Or harm u." CV said, "U are using me for my body and keep asking me to do things i dont want to do what do u think a 12 year old girl going to do u have ne scared and crying because u keep saying if i dont do it u are going to tell my which makes me more scared."

The defendant responded, "Just so u know I know ur mom," and reminded CV, "all u have to do is just do what I want and I won't say anything." He then sent a picture of CV's mother's phone number and said "thats ur mom number To show u I have ur mom number." Even though she recognized the number, CV bluffed and

Defendant's Initials _____     21

said, "[That's] not her number." The defendant responded, "Yes it is cause I text her on that number today. And she text me back today. . . so don't sit here and say its not her number cause it is..so don't play games with me ok.  Just do what I want ok And u will be ok."

The defendant kept persisting in asking CV to do what he wanted, alluding to the threat of telling her mom.  CV responded, "Plz dont do this i might just get hit because i dont want to do this. . . I'll. Just my phone took I'll just get hit I'll deal with the consequences. . . U are scareing me and im crying because u keep trying to get nudes and stuff from me."

The defendant replied, "You wouldn't have to go through with this if u would just listen. No I don't want nudes. . . I just want u to play with ur pussy while I jack my dick. This will only take 3 mins and im done. That's all and then we can hang up." CV asked, "Can it just be one minute and so u can screen record." He insisted on three minutes and said, "When I hang up the phone ill be done." CV asked, "Then can u leave me alone[?]" but the defendant said, "No we gonna still talk as usual." CV responded, "Can u just leave me alone after plz."

The defendant then asked if CV was ready.  CV sent another audio file, pleading, "Can you please leave me alone after this?" The defendant asked, "Are ur clothes off.  When I call u play with it and show me ur pussy while u play with it." CV asked again whether he would leave her alone after, and the defendant did not appear to answer. He just replied, "Are u ready. Is ur clothes off." CV said she was

Defendant's Initials _AL_                    22

only taking off her pants.  The defendant said, "Ok. And make sure I see ur pussy."
CV answered, "Okay."

At 12:26 a.m., the defendant asked, "U ready," and at 12:26 a.m., CV
responded, "Yes."  At that time, CV pulled down her pants and underwear to mid-
thigh as she sat on the toilet in her bathroom.  Then she livestreamed a video of
herself masturbating (showing her genitals on camera) as the defendant sent a
livestream video of himself masturbating to her.  The defendant did not speak in
either that video or the livestream, and he took care not to show his face.  The victim
pulled up her pants and put the camera down when her cousin walked in the
bathroom.

At approximately 12:27 a.m., when the defendant asked, "What happened.
Hello," and CV responded, "My cousin walked in."  Then the defendant asked, "Ok
u wanna finish[?]" and CV said, "Ok fine so u can leave me alone."  The defendant
called again, and CV aimed her camera at her thigh.  The defendant commented, "U
got it on mute. I can't see."

After that, CV repeatedly asked the defendant to "leave me alone."  The
defendant responded that he "would love to still talk to u."  CV said, "No cause i
told i when i was done with that i was going to block u so u can leave me alone i did
what u ask so [can] not tell my mom."  She went on to say, "i dont want to talk yo u
anymore u make me scared u mad me feel uncomfortable."  She then stated, "U
make me feel like killing myself because u kill threating me to do thingd things i dont
want to do."  The defendant apologized and asked CV not to do anything crazy.

Defendant's Initials _____    23

Still, CV went on, "U are the reason why i want to do it because u made me do things i did not want to do and u keep threating me to tell my mom if i did not do what u wanted me to do u were just focus on yourself instead of thinking how i felt or how u made me felt u were the reason why i was crying u were the reason why i was scared u are the reason why i feel rhe way i feel right now and stop calling me baby." The defendant said, "I'm not gonna ask u to do anything else," and expressed a desire to "start all back over as a normal talk ok." CV kept asking him to go away and to leave her alone.

The defendant then told CV that he was texting CV's mother that CV wanted to kill herself. CV sent an audio file to the defendant, asking him how he expected her not to say that, if he was the one making her feel that way. CV then returned to text, and asked the defendant to "get out of my life plz." The defendant persisted: "I wanna be in ur life." She responded, "Bye bye u are getting block so i dont have these feelings anymore." The defendant replied, "Wow ok block me. See what happens when u block me."

Shortly thereafter, after CV's minor siblings and relatives discovered that CV was very distressed, they began messaging the defendant through CV's account, telling him to leave CV alone. The defendant replied, "I'm letting her mom know right now. Fuck that. Bye. I got all messages. Bye. Fuck that shit. Go ahead and block me." One of CV's minor female relatives then sent an audio file to the defendant, threatening to press charges and instructing the defendant to block and delete CV from his account.

Defendant's Initials _AL_                    24

The defendant responded, "[I don't care] ima still put my dick in ur mouth. U will see...don't get caught outside. Just letting u know. Tell her she better not be outside either." The defendant went on to say, "She must ain't tell u I know who she is and her mom. U want me to show u her momma number. Look. [CV's mother's phone number]. That u for ur info. So don't speak before u say shit. Listen don't worry bout who this is. I know all yall. Trust that."

As a result of the defendant's conduct, he could have been (and indeed was) charged with a criminal offense under federal law, specifically, the production of child pornography, in violation of 18 U.S.C. § 2251(a).

Defendant's Initials _AL_                    25