UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                                  Case No. 6:22-cr-19-PGB-DCI

ANDRE MAURICE LEWIS
_____/

SENTENCING MEMORANDUM

Andre Lewis, through his undersigned counsel, respectfully moves this Honorable Court for the imposition of a sentence not to exceed thirty (30) years imprisonment, followed by a duration of supervised release as deemed appropriate by the Court. In consideration of the facts of this case and Mr. Lewis' unique circumstances and characteristics, Mr. Lewis respectfully proposes that such a sentence would be sufficient but not greater than necessary to comply with the purposes of sentencing. As grounds in support thereof, Mr. Lewis states the following:

I. **The offense conduct in this case was limited to online chat message communications and did not include in-person, hands-on, or otherwise physical conduct.**

Mr. Lewis' offense conduct is accurately reflected in the Presentence Investigation Report (PSR). Doc. 43. With respect to the offense of conviction, enticement of a minor, in summary, Mr. Lewis used the Snapchat application to solicit child sexual abuse material (CSAM) from a 12 year-old female victim.

Although Mr. Lewis' offense conduct was undoubtedly disturbing, such conduct was limited to electronic communications over a smartphone application. And while substance of Mr. Lewis' communications was coercive and threatening in nature, there are no allegations that Mr. Lewis had the intention or capacity to follow through with any of his threats, or that he ever took any steps in furtherance of carrying out such threats. Moreover, none of Mr. Lewis' actions in this case were "hands-on" or otherwise beyond the confines of online chat messages.

## II. Mr. Lewis accepted responsibility for, and cooperated in the investigation and prosecution of, his offense.

Mr. Lewis entered a plea of guilty pursuant to a written plea agreement. PSR, ¶ 5. There is no information indicating that Mr. Lewis impeded or obstructed justice. PSR, ¶ 47. Mr. Lewis accepted responsibility for his offense, and assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty. PSR, ¶¶ 59, 60. In addition to his acceptance of responsibility by way of his guilty plea, Mr. Lewis also declined to raise any substantive objections to the numerous narratives and allegations as set forth throughout the PSR. By doing so, Mr. Lewis eliminated the need for any child victims to testify or otherwise further participate in the prosecution of this case.

**III. Mr. Lewis' applicable guidelines and sentencing exposure in federal court dramatically exceeds his (hypothetical) sentencing exposure in state court for the same conduct.**

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that prison sentences should be proportionate to the crime charged. "[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id* at 292.

Although Mr. Lewis' offense of conviction is that of enticing a minor in violation of 18 U.S.C. § 2422(b), the fourth element of the offense conduct requires that, "One or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under federal law, specifically, the production of child pornography, in violation of 18 U.S.C. § 2251(a)." *See* Plea Agreement at Doc. 31. Pursuant to Florida law, for example, the maximum sentence for production of child pornography, a second-degree felony, is 15 years imprisonment.[1] Fla. Stat. § 827.071(2) (2021). Ironically, the

---

[1] A person is guilty of the use of a child in a sexual performance if, knowing the character and content thereof, he or she employs, authorizes, or induces a child less than 18 years of age to engage in a sexual performance or, being a parent, legal guardian, or custodian of such child, consents to the participation by such child in a

3

hypothetical maximum sentence for Mr. Lewis' offense conduct, if it were to have been charged as "production" under Florida law, is half of the low-end of his applicable sentencing guidelines (360 months imprisonment). As the Supreme Court noted, "[i]f more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive." *Helm* at 291. Although Mr. Lewis does not seek to minimize the significance of his misconduct, one can imagine a scenario in which the production of CSAM involves more severe psychological and/or physical harm to the victim than that of coercive communications through an online chat message application.

### IV. Mr. Lewis' history and characteristics include significant mental health deficits for which he has not received adequate treatment.

The defense respectfully proposes that the ultimate issue before the Court in determining an appropriate sentence in this case is how to go about weighing Mr. Lewis' abhorrent conduct against his well-documented history of mental health deficits. Records and information provided throughout the PSR and the instant Sentencing Memorandum reflect Mr. Lewis' multiple findings

---

sexual performance. Whoever violates this subsection is guilty of a felony of the second degree. Fla. Stat. § 827.071(2) (2021).

of incompetency and mental health deficits that date back to the age of five years old.

In his adolescence, Mr. Lewis demonstrated behavioral issues in school and the need for special education. By the age of 17 years old, Mr. Lewis became involved in the criminal justice system with multiple burglary and theft-related cases. Unfortunately, a review of Mr. Lewis' records reflect that he did not receive the kind of targeted mental health intervention and treatment that he clearly required. Mr. Lewis' mental health history is discussed in more detail below, and Mr. Lewis asks that the Court consider his need for professional rehabilitative treatment when determining and appropriate sentence in this case.

## V.     Additional mitigation for the Court's consideration.

### A. Specific Issue Polygraph Examination Report.

Mr. Lewis submitted to a specific issue polygraph examination conducted by J. Larry Jerald, a certified polygraphist. Mr. Lewis answered "no" to the following questions:

1. After you turned 18 years old, did you sexually touch anyone under 18 years old?
2. After you turned 18 years old, did you have physical sexual contact with anyone under 18 years old?"

An analysis of Mr. Lewis' physiological responses to the above relevant test questions resulted in the opinion that there was "no deception indicated." App. A.

### B. Mr. Lewis' history of psychological evaluations and findings of incompetency.

A table summarizing the chronology of Mr. Lewis' psychological evaluations and disability determinations is provided for the Court's consideration. App. B.

### C. Mr. Lewis' high school records.

Mr. Lewis' high school records, that confirm a finding of Educable Mentally Handicapped and placement in speech therapy and exceptional learning courses, is provided for the Court's consideration. App. C.

### D. Mr. Lewis' Social Security Records and Disability Determination.

Excerpts from Mr. Lewis' Social Security Records and Disability Determination are provided for the Court's consideration. App. D. Such records include, for example, the following:

**MEDICALLY DETERMINABLE IMPAIRMENTS AND SEVERITY**
Does the individual have one or more medically determinable impairments?
Yes

| IMPAIRMENT DIAGNOSIS | PRIORITY | SEVERITY |
| --- | --- | --- |
| 3152 – Learning Disorder | Primary | Severe |
| 2960 – Affective Disorders | Secondary | Severe |
| 2940 – Organic Mental Disorders | Other | Severe |

**E. Letters of support.**

Toy Gonzalez, Mr. Lewis' mother, gave birth to Mr. Lewis, her third of five children, at the age of 19 years old. Ms. Gonzalez' mother and sister helped raise Mr. Lewis from birth while she struggled to get on her feet. She was a single parent, as Mr. Lewis' father was never in the picture. With respect to Mr. Lewis' mental functioning, Ms. Gonzalez describes how she can "tell that something is missing there," and expresses her concerns for Mr. Lewis' well-being. App. E–1.

Sirkit Lewis, Mr. Lewis' aunt, offers that she "always believed that [Mr. Lewis] was mentally challenged," and compares his psychological functioning at "a mental level of an 11-year-old." Ms. Lewis observed how, when growing up, Mr. Lewis was not "maturing at the same level as most kids." Ms. Lewis believes that Mr. Lewis would have benefited from better care and resources when growing up and asks that the Court consider Mr. Lewis' upbringing when determining an appropriate sentence. App. E–2.

Kimberly Lewis, Mr. Lewis' sister, describes how she and her brother were raised by their grandmother while their mother worked. Despite their economic hardship and Ms. Lewis' own struggles with being a young mother, Mr. Lewis was a caring and supportive brother to her and her family. When Mr. Lewis and his wife gave birth to their son, approximately ten years ago,

7

Mr. Lewis would often turn to his sister for parenting advice. Ms. Lewis describes her brother as "mentally challenged," and asks that the Court consider his positive characteristics. App. E–3.

Misha Hughes, Mr. Lewis' former work supervisor, was a manager at the Dollar Tree when Mr. Lewis worked at the store between 2019 and 2020. Ms. Hughes describes Mr. Lewis as an honest, hard-working, helpful, and dedicated employee who was always on-time for work. When Mr. Lewis transferred to another store location, his work colleagues were saddened to see him leave. Ms. Hughes offers that the news of this case came as a shock to her, because Mr. Lewis always demonstrated a "tremendous amount of trustworthiness." App. E–4.

### F. Psychological Evaluation by Dr. Susan Sullivan, PhD.

Dr. Susan Sullivan, PhD, a licensed psychologist practicing in clinical and forensic psychology, conducted a psychological evaluation of Mr. Lewis to assess his psychological functioning and treatment needs, and provided a written report for the Court's consideration. PSR. Dr. Sullivan reviewed Mr. Lewis' historical records that included: school records; numerous prior forensic psychological evaluations; polygraph report; and social security records. Dr. Sullivan also administered the following procedures: a clinical interview, Mental Status Examination; Minnesota Multiphasic Personality Inventory – 3

(MMPI-3); Personality Assessment Inventory (PAI); Beck Depression Inventory – II (BDI-II); and the Miller Forensic Assessment of Symptoms Test (M-FAST).

Mr. Lewis evidenced learning disabilities as illustrated by his placement in special education services beginning at age five (5), including the Educable Mentally Handicapped Program at age six (6). As Dr. Sullivan notes, a diagnosis of Intellectual Disability (formerly known as mild mental retardation) is a lifelong condition. Mr. Lewis' school records demonstrate numerous behavioral problems that included disruptive, inappropriate, and disrespectful behavior. Mr. Lewis' involvement in the criminal justice system also began when he was a minor. Dr Sullivan provided a historical summary of Mr. Lewis'

A psychological evaluation by Lawrence Pasman, PhD, for the Florida Office of Disability Determinations, dated September 15, 2011, provided diagnoses of Dysthymic Disorder, Learning Disorder NOS (per report of claimant's sister), Rule Out Borderline Intellectual Functioning, and Rule Out Antisocial Personality Disorder.

A forensic psychological evaluation by Valerie McClain, PsyD, dated January 13, 2017, provided diagnoses of Intellectual Development Disorder and Unspecified Depressive Disorder. Dr. McClain provided the opinion that

9

Mr. Lewis was not competent to proceed to trial, and competency training was recommended. A subsequent forensic psychological evaluation by Dr. McClain, dated May 31, 2018, provided diagnoses of Intellectual Development Disorder and Unspecified Depressive Disorder. Dr. McClain provided the opinion that Mr. Lewis was not competent to proceed to trial and that he was not restorable to competency.

A Forensic Evaluation by Richard Carpenter, PhD, dated February 1, 2019, provided diagnoses of Major Depressive Disorder with Psychotic Features; and Cannabis and Alcohol Dependence, In Partial Remission, in Controlled Environment. Dr. Carpenter recommended that Mr. Lewis be found incompetent to proceed.

A Forensic Evaluation by Richard Cipriano, PsyD, dated April 9, 2019, was court-ordered for the determination of competency to proceed due to mental illness. Dr. Cipriano provided a diagnosis of Malingering and recommended that Mr. Lewis be found competent to proceed. Later that same year, a Forensic Evaluation by Joseph Paight, PsyD, dated October 30, 2019, recommended that Mr. Lewis be found Competent to Proceed. As Dr. Sullivan noted, "a person who has an intellectual disability may attempt to malinger memory impairment in a way that is unsophisticated and obvious."

In Dr. Sullivan's personality assessment testing of Mr. Lewis, he presented some difficulty with the MMPI-3 and PAI, resulting in responses that were not considered valid. As Dr. Sullivan opined, "It is most likely in his case that the high frequency of unusual responses was due to random responding, related to intellectual disability and limited reading skills." The BDI-II is the most widely used instrument for detecting depression and measures characteristic attitudes and symptoms of depression. The BDI-II results were deemed valid, and Mr. Lewis endorsed a wide range of depressive symptoms. Dr. Sullivan also administered the M-FAST to assess the likelihood of whether Mr. Lewis was feigning psychiatric disorder. Mr. Lewis' responses to the M-FAST were not consistent with malingering.

Dr. Sullivan provided the following Diagnostic Impressions:

- Major Depressive Episode, Recurrent Episode, Mild (By History)
- Alcohol Use Disorder, Moderate, In Sustained Remission, In a Controlled Environment
- Opioid Use Disorder, Moderate, In Sustained Remission, In a Controlled Environment
- Cannabis Use Disorder, Mild, In Sustained Remission, In a Controlled Environment
- Stimulant Use Disorder, Cocaine, Moderate, In Sustained Remission, In a Controlled Environment
- Other Hallucinogen Use Disorder, Moderate, In a Controlled Environment
- Intellectual Disability, Mild

11

Dr. Sullivan concludes by offering that, when intelligence test data was included over the course of his several psychological evaluations over the years, Mr. Lewis was found to be functioning in the range of Intellectual Disability, Mild. Additionally, "Mr. Lewis appears to be a good candidate for placement in residential dual diagnosis treatment for mental health/substance use disorders, in a facility that can provide services for individuals with intellectual disabilities."

## CONCLUSION

Mr. Lewis respectfully requests that this Honorable Court impose a sentence not to exceed thirty (30) years imprisonment, followed by an appropriate term of supervised release. Considering Mr. Lewis' history and characteristics, psychological deficiencies, and need for appropriate treatment, such a sentence would be sufficient but not greater than necessary to comply with the purposes of sentencing and satisfy the application of the factors enumerated in 18 U.S.C. § 3553(a).

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER

*/s/Joshua R. Lukman*
Joshua R. Lukman, Esq.
Assistant Federal Defender
Florida Bar Number: 88213
201 South Orange Avenue, Ste 300
Orlando, Florida 32801
Telephone: 407-648-6338
Fax: 407-648-6765
E-Mail: joshua_lukman@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy the foregoing Sentencing Memorandum was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to Emily Chang, Esq., Assistant United States Attorney, this 10th day of November 2022.

*/s/Joshua R. Lukman*
Joshua R. Lukman